T.C. Summary Opinion 2018-15

UNITED STATES TAX COURT

GARY K. SHERMAN AND GWENDOLYN L. SHERMAN a.k.a. GWEN L.
SHERMAN, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 13052-16S.                    Filed April 2, 2018.

Mitchell I. Horowitz and Qian Wang, for petitioner.

Charles V. Dumas III and Alissa L. VanderKooi, for respondent.

SUMMARY OPINION

BUCH, Judge:  This case was heard pursuant to the provisions of section

7463 of the Internal Revenue Code in effect when the petition was filed.[1]  Under

_____

[1]Unless otherwise indicated, all section references are to the Internal
Revenue Code (Code) in effect for the years in issue, and all Rule references are to
the Tax Court Rules of Practice and Procedure. All monetary amounts are rounded
(continued...)

section 7463(b), the decision to be entered is not reviewable by any other court, and this opinion may not be treated as precedent for any other case.

Mrs. Sherman is a highly accomplished businesswoman. Over the course of three decades she built a successful career, first as a beauty consultant, then a sales director, and finally a national sales director for Mary Kay, Inc. (Mary Kay).[2] At the end of 2004 she retired. In 2005 she began receiving retirement benefits from Mary Kay. The question before the Court is whether those benefits are subject to self-employment tax. We hold that they are.

## Background

Mrs. Sherman began her career as a beauty consultant in the 1970s. She was very successful, both at selling products and at recruiting and training other consultants. As a result she became a sales director and then a national sales director. National sales director is the highest position in the Mary Kay sales force. From 1993 until she retired in 2004, Mrs. Sherman was one of a small number of national sales directors. As a national sales director Mrs. Sherman recruited and trained beauty consultants and sales directors and received a

_____

[1](...continued)
to the nearest dollar.

[2]The name Mary Kay is used to refer to Mary Kay, Inc., and related entities including the board of directors.

commission from all of the wholesale purchases made by the beauty consultants and sales directors in her network.

Mary Kay offered Mrs. Sherman an opportunity to participate in the Family Security Program. The Family Security Program offers national sales directors a suite of benefits including normal, early, and disability retirement benefits, life insurance coverage, and death benefits. To be eligible for full retirement benefits a national sales director either must be 65 years old and have five years of service or must have worked as a national sales director for at least 15 years. To qualify for the program, national sales directors must retire by the end of the year in which they turn 65. They are also required to enter into a noncompete agreement with Mary Kay.

Under the program a national sales director who elects normal retirement benefits is entitled to receive monthly payments equal to one-twelfth of her final average commission for 15 years. The final average commission is the average of the national sales director's highest three years of commissions during her last five years of service.

Mrs. Sherman entered into the Family Security Program agreement in 1993. She retired at the end of 2004 and began receiving payments under the agreement in 2005. In a letter to Mrs. Sherman dated October 25, 1995, from the senior vice

president, general counsel, and secretary of Mary Kay, the payments under the Family Security Program are described as "subject to self-employment tax". Mary Kay reserved the right to unilaterally amend the Family Security Program agreement, and in 2008 it did just that. Mary Kay added section 10.9 to the Family Security Program agreement, which states that "[t]he plan is intended to be a non-qualified deferred compensation arrangement and * * * [it] is intended to meet the requirements under section 409A of the Code".

Before Mrs. Sherman retired, both she and Mr. Sherman worked hard to maximize her commissions, at least in part to increase her payments under the Family Security Program. For most of Mrs. Sherman's career, Mr. Sherman occasionally lent a helping hand to his wife as she developed her Mary Kay business. But in 2000 Mr. Sherman retired from his career in the financial services industry to help his wife develop her business and to "maximize the income during the last five years" of her Mary Kay business. Mr. Sherman stepped in behind the scenes to help his wife with logistics, financial matters, and other tasks while Mrs. Sherman spent long days on the phone or traveling to meet with the members of her sales network, to conduct training events, and to recruit new sales directors and beauty consultants. From 2000 to 2005 both of the Shermans made developing Mrs. Sherman's Mary Kay business their full-time job.

The purpose and effect of this joint effort was to maximize Mrs. Sherman's retirement benefits under the Family Security Program.

During the years in issue, 2013 and 2014, the Shermans received $173,707 each year under the Family Security Program. That amount was reported on Forms 1099-MISC, Miscellaneous Income, for 2013 and 2014 as nonemployee compensation. The Shermans reported the payments as "other income" and attached documents prepared by Mr. Muscio, an accountant who had experience addressing the unique tax concerns of national sales directors. The document was titled "Statement Re: Income From Mary Kay, Inc." In the documents the Shermans asserted that the income received from Mary Kay under the Family Security Program was not subject to self-employment tax. They describe the payments as "termination payments" and detail their justification for the position that the income is not subject to self-employment tax.

In 2013 the Commissioner examined the Shermans' returns for 2011. During the examination the Shermans were represented by Mr. Muscio. He argued that the payments under the Family Security Program were not deferred compensation subject to self-employment tax. After Mr. Muscio and the examining agent traded correspondence, the Commissioner conceded that the

payments under the Family Security Program in 2011 were not self-employment income and concluded that no additional tax was due.

Mr. Sherman prepared and filed joint returns for 2013 and 2014. When Mr. Sherman received notice that the 2013 return was being examined and that the Commissioner was challenging the position that the payments under the Family Security Program were not subject to self-employment tax, he believed that a mistake had been made. At the same time that Mr. Sherman was trying to resolve the dispute over the 2013 returns, Mrs. Sherman's health was declining as a result of Alzheimer's disease.

On March 7, 2016, the Commissioner issued a notice of deficiency for 2013 and 2014. The Commissioner determined that the income the Shermans received from Mary Kay was subject to self-employment tax and determined deficiencies of $15,658 and $15,762 and an accuracy related penalty under section 6662(a) of $3,132 and $3,152 for 2013 and 2014, respectively. On June 3, 2016, the Shermans filed a timely petition to this Court challenging the notice of deficiency. At the time of the petition they resided in Michigan.

At trial the Shermans argued that the payments received from Mary Kay are not deferred compensation and therefore are not subject to self-employment tax. They assert that the payments were to "acquir[e] [Mrs. Sherman's] valuable

goodwill and other assets associated with [her] Mary Kay business." In the alternative the Shermans argued that the payments were received in exchange for Mrs. Sherman's agreement not to compete with Mary Kay. They also argued that because Mrs. Sherman entered into the Family Security Program agreement and began receiving payments under the program before the enactment and effective date of section 409A, and the amendment to the Family Security Program agreement in 2008, the payments received under the Family Security Program are "grandfathered" out of and not subject to self-employment tax.

At trial and in his brief the Commissioner argued that the income that Mrs. Sherman received from Mary Kay in 2013 and 2014 is subject to self-employment tax. As support for this position the Commissioner highlighted section 10.9 of the Family Security Program agreement as well as recent precedent from this Court finding that payments from Mary Kay under the Family Security Program are subject to self-employment tax. The Commissioner also argued that the Shermans are bound by the 2008 amendment to the Family Security Program agreement, which stated that the payments under the program are deferred compensation.

At trial neither party discussed the accuracy-related penalties. On brief the Commissioner conceded the accuracy-related penalties under section 6662(a).

Discussion

In general, the Commissioner's determinations in a notice of deficiency are presumed correct, and taxpayers bear the burden of proving otherwise.[3] While the burden may shift to the Commissioner under section 7491(a) if certain conditions are met, the Shermans have not claimed that the burden should shift and the record in this case does not support shifting the burden.

The question before the Court is whether the income that Mrs. Sherman received is deferred compensation subject to self-employment tax. Section 1401 imposes a tax on "self-employment income". Self-employment income is any income "derived by an individual from any trade or business carried on by that individual."[4] To state it more simply, to determine whether income is subject to self-employment tax we must determine whether the income was "(1) derived, (2) from a trade or business, (3) carried on by petitioner."[5] We have held that "[t]he

---

[3]Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933).

[4]Peterson v. Commissioner, T.C. Memo. 2013-271, at *8, aff'd in part, dismissed in part, 827 F.3d 968 (11th Cir. 2016); see sec. 1402(a).

[5]Jackson v. Commissioner, 108 T.C. 130, 134 (1997).

self-employment tax provisions are broadly construed in favor of treating income as earnings from self-employment."[6]

In Peterson v. Commissioner, T.C. Memo. 2013-271, we held that payments under the same Family Security Program that is the subject of this case are subject to self-employment tax. Our ruling on the payments under the Family Security Program was upheld by a divided Court of Appeals for the Eleventh Circuit. Although the opinion of the Court of Appeals was divided, both the majority and the dissent agreed that payments under the Family Security Program are subject to self-employment tax. All of the material facts in this case are identical to the facts in Peterson. We see no reason to depart from this precedent.

Here, the parties agree that Mrs. Sherman carried on a trade or business. The Commissioner and the Shermans disagree over whether the payments under the Family Security Program were "derived" from that trade or business. To be derived from a trade or business, income must be "tied to the quantity or quality of the taxpayer's prior labor, rather than the mere fact that the taxpayer worked or works for the payor".[7]

---

[6]Bot v. Commissioner, 118 T.C. 138, 145 (2002), aff'd, 353 F.3d 595 (8th Cir. 2003).

[7]Jackson v. Commissioner, 108 T.C. at 135 (quoting Milligan v.

(continued...)

In Peterson we found that "[t]he Mary Kay distributions were 'tied to' the quantity and quality of Mrs. Peterson's prior labor."[8] The same is true here. Like the payments in Peterson, Mrs. Sherman's payments under the Family Security Program were "based on her average commissions over the five years prior to her retirement."[9] Further, the Family Security Program agreement describes the payments as deferred compensation, and the Shermans were explicitly informed by Mary Kay in 1995 that the payments under the Family Security Program were deferred compensation and subject to self-employment tax. Moreover, at trial Mr. Sherman testified that he ended his career in the financial services industry in order to help develop his wife's Mary Kay business and "maximize the income during the last five years", suggesting that they understood that the payments were tied directly to her network's sales during that period.

The Shermans argue that we were wrong in Peterson. They contend that payments under the Family Security Program should get the same treatment as

---

[7](...continued)
Commissioner, 38 F.3d 1094, 1098 (9th Cir. 1994)).

[8]Peterson v. Commissioner, at *9.

[9]Peterson v. Commissioner, at *9.

termination payments in the insurance industry.[10]  In <u>Jackson</u> we held that certain termination payments in the insurance industry were not subject to self-employment tax.  The contracts governing those payments differed in one critical way:  Termination payments were subject to adjustments based on declines in the agent or broker's book of business after retirement.[11]

Mrs. Sherman's payments under the Family Security Program were fixed on the day she retired and based on work she had already preformed.  In <u>Jackson</u> we remarked that in a deferred compensation agreement "[t]he amount ultimately to be paid to the individual is a vested property right when earned which usually cannot be cut off arbitrarily."[12]  Mrs. Sherman's payments would be in jeopardy only if she violated the Family Security Program agreement.  They were not subject to the same risk and uncertainty as the termination payments in <u>Jackson</u>.[13]

The question of whether the payments under the Family Security Program were grandfathered under section 409A is irrelevant.  Section 409A addresses the

---

[10]<u>See e.g.</u>, <u>Jackson v. Commissioner</u>, 108 T.C. 130.

[11]<u>Jackson v. Commissioner</u>, 108 T.C. at 132.

[12]<u>Jackson v. Commissioner</u>, 108 T.C. at 138.

[13]<u>See also</u> <u>Gump v. United States</u>, 86 F.3d 1126, 1128-1129 (Fed. Cir. 1996); <u>Milligan v. Commissioner</u>, 38 F.3d at 1099.

treatment of a nonqualified deferred compensation plan. It does not address the self-employment tax consequences of deferred compensation.

## Conclusion

We find that Mrs. Sherman's payments under the Family Security Program from Mary Kay in 2013 and 2014 are deferred compensation and subject to self-employment tax under section 1401. Consequently we sustain the deficiencies in the notice of deficiency. The Commissioner conceded the accuracy-related penalties on brief, and consequently the penalties determined in the notice are not sustained.

<u>An appropriate decision</u>

<u>will be entered</u>.